UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
┌─────────────────────────────────────┐
│ WEST COAST SETTLEMENTS II,           │
│ LLC,                                 │
│                                      │
│            Plaintiff,                │
│                                      │
│      -v-                             │
│                                      │
│ TVPX ARS, Inc.,                      │
│                                      │
│            Defendant.                │
└─────────────────────────────────────┘
```

25-cv-7786 (JSR)

OPINION & ORDER

JED S. RAKOFF, U.S.D.J.:

Before the Court is the motion to dismiss of defendant, TVPX ARS, Inc. ("TVPX"). See ECF No. 17. In short, TVPX argues that the claim of plaintiff West Coast Settlements II, LLC ("WCS 2") for breach of contract must be dismissed for WCS 2's lack of contractual standing, and that WCS 2's gross negligence claim must be dismissed because it is either duplicative of the breach of contract claim or because insufficient allegations exist to support the claim. For the reasons set forth below, the Court grants the motion to dismiss without prejudice and with leave to amend.

I.   Background

West Coast Settlements 1 ("WCS 1") was a company that acquired life insurance policies. Compl. ¶¶ 1, 16. TVPX acted as a "securities intermediary" for WCS 1 with respect to those policies pursuant to the terms of the Securities Account Control Agreement ("SACA"). Id. ¶¶ 6-8. Under the terms of the SACA, TVPX undertook

1

the responsibility to "promptly forward any lapse notices [TVPX] receive[d]" from the issuers of the purchased policies "indicating that coverage thereunder is terminated or may be about to terminate." Id. ¶¶ 9-11.

On March 8, 2021, TVPX received a lapse notice relating to a policy valued at $1,000,000. Compl. ¶ 23. TVPX allegedly failed to notify WCS 1 of the lapse, and as a result, that policy was not reinstated. Id. ¶¶ 24-25. On May 11, 2022 -- one year later -- the owners of WCS 1 dissolved the company, filed a Certificate of Cancellation, and transferred the rights to the policies to John Muratore. Id. ¶ 37; ECF No. 19-3.

Between August 2022 and February 2024, TVPX received four additional lapse notices regarding four life settlement policies to which WCS 1 was the beneficiary with a combined face value of $8,000,000. Compl. ¶¶ 20-22, 26-35. In each case, TVPX allegedly failed to forward the lapse notices to WCS 1, and each policy lapsed. Id.

In 2024, Mr. Muratore transferred the rights to the policies to Benjamin Pearsey, who then transferred the rights to WCS 2. Id. ¶¶ 37-39.

On September 19, 2025, WCS 2 brought this action against TVPX, alleging that TVPX, by failing to provide notice of five lapse notices, breached its contract with WCS 2, lost the plaintiff $9,000,000, and was grossly negligent.

2

II.  Discussion

A. Breach of Contract

TVPX has moved to dismiss on the basis that it contracted with WCS 1, not WCS 2, that the SACA explained that no rights could be transferred by means other than operation of law or the written consent of the parties, and that no allegation in the Complaint suggested that WCS 1's rights had been transferred to WCS 2 by those means. As such, TVPX argues that the breach of contract claim must be dismissed for lack of contractual standing.

In response, WCS 2 argues (1) that TVPX, as an allegedly breaching party under the SACA, cannot seek to enforce the contract's terms, and (2) that even if WCS 1 is the proper party in interest, FRCP 17(a)(3) prevents courts from dismissing an action if the real party in interest can ratify an action, and that WCS 1's manager -- John Muratore – has now formally ratified this lawsuit.

The Court finds that, as pled, WCS 2 has no contractual standing to bring the breach of contract claim. Contractual standing concerns "whether a party has the right to enforce a contract." SM Kids, LLC v. Google LLC, 963 F.3d 206, 211 (2d Cir. 2020). A plaintiff has contractual standing if "the plaintiff is in privity of contract with the defendant or is a third-party beneficiary of the contract." Hillside Metro Assocs., LLC v. JPMorgan Chase Bank, Nat'l Ass'n, 747 F.3d 44, 49 (2d Cir. 2014).

3

WCS 2 is neither in privity of contract with the defendant nor a third-party beneficiary of the contract between WCS 1 and TVPX, and the Complaint contains no such allegations. To be sure, the Complaint alleges that WCS 2 is the "successor in interest to WCS 1," Compl. ¶ 1, but "general statement[s] of successor-in-interest liability [are] wholly conclusory and hence insufficient to survive a motion to dismiss." In re Tronox, Inc., 2010 WL 2835545, at *15 n.212 (S.D.N.Y. June 18, 2010) (unpublished). And, in any event, that language alone does not comply with the requirements of the SACA requiring written consent before rights can be transferred, and WCS 2 does not argue that this one allegation suffices to permit it to stand-in for WCS 1's rights under the contract with TVPX. Accordingly, WCS 2 cannot bring a breach of contract claim based upon a contract to which it was not a party and where it has not alleged that WCS 1's rights or TVPX's obligations under the SACA were properly assigned or transferred to WCS 2.

In response, WCS 2 argues that TVPX materially breached the contract by failing to forward the five lapse notices at issue, and that it therefore forfeited any contractual right to enforce restrictions concerning assignment or transfer. See Nadeau v. Equity Residential Props. Mgmt. Corp., 251 F. Supp. 3d 637, 641 (S.D.N.Y. 2017) (stating that a party that materially breaches a contract cannot enforce that contract against a non-breaching

4

party). But this confuses contract enforcement with contractual standing. The absence of contractual standing is a "threshold defense . . . that must be raised and disposed of at the outset of the suit," Commerzbank AG v. Wells Fargo Bank, N.A., 2024 WL 4554081, at *4 (2d Cir. Oct. 23, 2024) (unpublished), because "[w]ithout a contractual relationship, there can be no alleged breach." Inter Impex S.A.E. v. Comtrade Corp., 2004 WL 2793213, at *4 (S.D.N.Y. Dec. 6, 2004) (unpublished); Hotel Aquarius, B.V. v. PRT Corp., 1992 WL 391264, at *6 (S.D.N.Y. Dec. 22, 1992) (unpublished) (plaintiff cannot claim breach of contract based upon contract to which it was not a party); see also Blank v. Noumair, 658 N.Y.S.2d 88 (N.Y. App. Div. 1997) (finding that plaintiff's breach of contract cause of action was properly dismissed because the defendant was not a party to the agreements in question).

In the alternative, WCS 2 argues that Rule 17(a)(3) provides a ratification procedure preventing dismissal. Under Rule 17(a)(3), if there is a challenge to whether the real party in interest is represented in the litigation, the "court may not dismiss an action . . . until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action." FRCP 17(a)(3). "To ratify a suit, the real party in interest must (1) authorize continuation of the action and (2) agree to be bound by its result." Sands

Harbor Marina Corp. v. Wells Fargo Ins. Servs. of Oregon, Inc., 156 F. Supp. 3d 348, 358 (E.D.N.Y. 2016). WCS 2 argues that this is precisely what occurred here: WCS 1 was a manager-managed LLC, the manager was John Muratore, and in connection with WCS 2's opposition to the motion to dismiss, John Muratore formally ratified this lawsuit.

The Court rejects WCS 2's ratification argument, however, for two independent reasons. First, WCS 1 has already dissolved and cannot now ratify this suit. Under New York law, "persons winding up the limited liability company's affairs may . . . prosecute [civil] suits." N.Y. Limit. Liab. Co. § 703(b). But although John Muratore identifies himself as the individual in charge of "wind[ing] up WCS pursuant to the Operating Agreement," see ECF No. 20-1, that runs contrary to the documentary evidence submitted to the Court alongside TVPX's motion indicating that WCS 1 was terminated as of May 11, 2022, see ECF No. 19-3. Further, the Complaint asserts that Muratore was supplanted as the interim manager of WCS 1 by Benjamin Pearsey in January 2024, so Muratore would have no ability to ratify this suit on behalf of WCS 1 at this point. Compl. ¶ 38.

Accordingly, the Court dismisses WCS 2's breach of contract claim for lack of contractual standing, but without prejudice to trying to cure this deficiency through prompt amendment.

B. Gross Negligence

TVPX next argues that WCS 2's claim for gross negligence must also be dismissed because insufficient allegations have been pled to give rise to such a claim, and in any event, the claim is duplicative of the breach of contract claim. The Court rejects the first argument, but dismisses the gross negligence claim on the second ground.

On the first ground, TVPX argues that WCS 2's allegations are bare and conclusory and fail to meet the standards necessary to survive a motion to dismiss. Specifically, TVPX argues that the Complaint's allegations that TVPX "failed in its duty to send lapse notices," and that this "smack[s] of intentional wrongdoing," Compl. ¶¶ 52-53, are insufficient to state a claim for gross negligence.

To state a claim for gross negligence under New York law, "a plaintiff must allege (1) that the defendant owed him or her a cognizable duty of care; (2) that the defendant breached that duty; and (3) that the plaintiff suffered damage as a proximate result of that breach." Di Benedetto v. Pan Am. World Serv., 359 F.3d 627, 630 (2d Cir. 2004). Gross negligence claims are governed by FRCP 8(a), which states that a plaintiff need only allege facts suggesting a plausible inference that "the defendant's conduct 'evinces a reckless disregard for the rights of others or smacks of intentional wrongdoing.'" Bayerische Landesbank, New York Branch v Aladdin Capital Mgmt. LLC, 692 F.3d 42, 61 (2d Cir. 2012).

7

The Court finds that WCS 2's allegations, though somewhat minimal, are sufficient to state a claim for negligence. The Complaint alleges that TVPX had an obligation to notify WCS of five lapse notices, that TVPX took no action, and that it allowed all five policies to lapse. These allegations state facts sufficient to create a plausible inference of gross negligence.

Independently, however, TVPX argues that WCS 2's gross negligence claim must be dismissed because it is duplicative of WCS 2's breach of contract claim. "Under New York law, a breach of contract will not give rise to a tort claim unless a legal duty independent of the contract itself has been violated." Bayerische Landesbank, 692 F.3d at 58 (2d Cir. 2012). TVPX argues that no duty independent of the contract has been alleged because, for the purposes of the gross negligence claim, WCS 2 alleged only that TVPX "failed in its duty to send lapse notices," Compl. ¶ 52, which is the same conduct that WCS 2 alleged amounted to a breach of contract.

In response, WCS 2 argues that its claims are not duplicative because the gross negligence claim, in addition to being based on the SACA, is also based on duties under the Uniform Commercial Code ("UCC"). Specifically, WCS 2 argues that the SACA states that the defendant's duties of care arise from the terms of contract itself or "the UCC." ECF No. 19-2, § 4(b). And, pursuant to the UCC, a securities intermediary like the defendant here is required

to "promptly obtain and therefore maintain a financial asset . . . it has established in favor of its entitlement holders with respect to that financial asset." N.Y. UCC § 8-504(a). WCS 2 argues that by not promptly forwarding lapse notices, TVPX failed to "maintain" the financial assets at issue in this litigation in accordance with its duties under the UCC and therefore violated a legal duty independent of the SACA.

Under New York law, however, a claim based on the UCC constitutes an independent legal duty only if it is extraneous to the SACA. "It is a well-established principle" under New York law "that a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated." Clark-Fitzpatrick, Inc. v. Long Island R.R. Co., 70 N.Y.2d 382, 389 (1987). "This legal duty must spring from circumstances extraneous to, and not constituting elements of, the contract, although it may be connected with and dependent upon the contract." Id.

To determine whether the alleged gross negligence is non-duplicative, New York courts "consider[] the nature of the injury, the manner in which the injury occurred[,] and the resulting harm." Sommer v. Fed. Signal Corp., 79 N.Y.2d 540, 552 (1992). Accordingly, the gross negligence claim must also be dismissed. But while it is more doubtful that its deficiencies can be cured by amendment, nonetheless, since the Court is granting plaintiff

9

an opportunity to amend the complaint in connection with its breach of contract claim, it will allow plaintiff the opportunity to save its gross negligence claim by amendment.

In this case, the UCC is not extraneous to the SACA, so the gross negligence claim is duplicative of the breach of contract claim. The UCC specifically states that "[a] securities intermediary satisfies the duty in subsection (a) if . . . the securities intermediary acts with respect to the duty as agreed upon by the entitlement holder and the securities intermediary." N.Y. UCC § 8-504(c). In short, TVPX complies with the UCC by complying with the SACA and violates the UCC by failing to comply with the SACA. To the extent a duty under the UCC exists, then, it is coextensive with its SACA obligations and is not "extraneous to . . . the contract." Clark-Fitzpatrick, 70 N.Y.2d at 389.

In short, the Court hereby grants the defendant's motion to dismiss both claims, but without prejudice to plaintiff having a brief opportunity to amend the complaint to try to cure the deficiencies discussed above. Specifically, the plaintiff has until January 12, 2026, to file an amended complaint. If plaintiff files an amended complaint on or before January 12, 2026, and defendants then wish to renew their motion to dismiss, they may do so on the following schedule: moving papers to be filed by January 26, 2026; answering papers to be filed by February 9, 2026; reply papers to be filed by February 17, 2026. Oral argument on any such

renewed motion to dismiss will then be held on February 24, 2026 at 2 p.m. in Courtroom 14B of 500 Pearl Street, New York, New York 10007. All discovery is stayed pending decision on any such motion.

The Clerk of Court is respectfully directed to close ECF No. 17.

SO ORDERED.

New York, NY
December 29, 2025

JED S. RAKOFF, U.S.D.J.

11